**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Elizabeth Burdette Howe,<br><br>Plaintiff,<br><br>v.<br><br>Aspen University, Inc.,<br><br>Defendant. | No. CV-22-00939-PHX-DGC<br><br>**ORDER** |

Plaintiff Elizabeth Howe asserts breach of contract and related claims against Defendant Aspen University. Doc. 1. Defendant has filed a motion for summary judgment. Doc. 53. Plaintiff has filed a motion to strike portions of Defendant's reply brief. Doc. 62. The motions are fully briefed and neither party requests oral argument. For reasons stated below, the Court will grant both motions.

**I.   Background.**

In 2019, Plaintiff enrolled in Defendant's Bachelor of Science in Nursing pre-licensure program. Plaintiff completed one term in the program before being dismissed for administrative reasons. In September 2019, Plaintiff re-enrolled in the program and signed Defendant's Enrollment Agreement. By signing, she acknowledged that she had read Defendant's Academic Catalog, which contained Defendant's academic requirements and grading policy. The Catalog was updated each year Plaintiff was enrolled as a student. Docs. 54 ¶¶ 3-6; 57 ¶ 4.

Plaintiff took courses with Defendant throughout 2020 and into 2021. From April 13 to June 7, 2021, Plaintiff was enrolled in Maternal Health, Maternal Health-Clinical, Adult Health I, and Adult Health I-Clinical. Defendant's policy, laid out in the 2020-21 Catalog, stated that passage of the clinical component of a course was contingent on passage of the theory section of the course, meaning that if a student failed the theory section she would automatically fail the clinical component as well, regardless of the student's grade in the clinical component. Docs. 54 ¶ 8, 14-15; 57 ¶ 15.

In December 2020, the Arizona Board of Nursing ("ABON") began investigating Defendant after it received anonymous student complaints about its nursing program. ABON interviewed numerous Aspen faculty members prior to July 2021 as part of the investigation. Defendant entered into a consent order with ABON in September 2022 and ceased operating the nursing program. Docs. 57 ¶¶ 104-05; 57-2 at 6-13.

On May 26, 2021, Plaintiff spoke by phone with Defendant's Enrollment Director, Darren Rosselli, regarding an issue with Plaintiff's clinical rotations. Defendant asserts that Plaintiff used foul and harassing language throughout the call. Docs. 54 ¶¶ 28-29; 54 at 226-37; 57 ¶¶ 28-29.

In June 2021, Plaintiff was notified that she had failed both the Maternal Health and Adult Health I courses and had been academically dismissed from the nursing program. Plaintiff's dismissal was the result of a "Two-Failure Policy" outlined in the Catalog, which stated that students who failed any two attempts at core courses would be dismissed from the program. On June 18, 2021, Plaintiff emailed Aspen employee Megan Valcic to inform her that she had contacted an attorney to address "ongoing issues" at Aspen, including lack of support in her courses and other confusion. Docs. 54 ¶ 17; 57 at 257.

Plaintiff submitted three appeals of her dismissal. Her first appeal, made on June 23, 2021, addressed her final grades in the Material Health and Adult Health I courses. She argued that she suffered two personal losses around this time – the death of a close friend several days before the spring 2021 term and the death of a family member several weeks into the term – and that she believed she had been given the grades of another student in

her Maternal Health course. The appeal was denied on July 12, 2021. Docs. 54 ¶¶ 19-20, 23; 54 at 187-90.

Plaintiff submitted a second appeal on July 23, 2021, requesting re-entry to the nursing program. Her re-entry request was denied on August 12, 2021. The following day, Plaintiff submitted a third appeal, again seeking re-entry into the nursing program. Plaintiff asserted that she had modified her schedule to better accommodate her schooling. Defendant notified Plaintiff that her appeal had been denied on August 30, 2021, and informed her that no further re-entry appeals would be considered. Docs. 54 ¶¶ 23, 25; 57 at 258.

Eighty-five students were dismissed from Defendant's Arizona nursing program under the Two-Failure Policy. Forty appealed the decision and 30 were re-admitted. Nine of those re-admitted had lower grade-point averages than Plaintiff at the time of her dismissal. Docs. 57 ¶ 85; 57-2 at 2.

Plaintiff brings a breach of contract claim based on Defendant's failure to allow her to retake her failed courses. She also brings claims for breach of the duty of good faith and fair dealing and unjust enrichment for wrongfully failing her in the Maternal Health and Adult Health I courses and for denying her requests for re-admission for retaliatory reasons. Doc. 1 ¶¶ 40-55.[1]

## II. Plaintiff's Motion to Strike.

Plaintiff's contract claims are based on the Enrollment Agreement signed by the parties when Plaintiff enrolled at Aspen. The Enrollment Agreement contains a "Governing Law" provision, which states that the agreement and the rights of the parties should be construed in accordance with Colorado law. Doc. 54 at 89. Defendant raises this choice of law provision in its motion for summary judgment and argues that Plaintiff has waived its application. Doc. 54 at 15-16. Defendant raises the choice of law question again in its reply, arguing that the provision – which Defendant drafted – is invalid under

---

[1] Plaintiff initially sought declaratory relief requiring reinstatement into Defendant's nursing program. *Id.* ¶¶ 57-61. Plaintiff has since abandoned that claim. Doc. 54 at 239.

Arizona choice of law principles. Doc. 60 at 8-11. Plaintiff moves to strike the invalidity argument because it was raised for the first time in a reply brief. Doc. 62.

Arguments raised for the first time in a reply brief are waived. *See United States v. Anderson*, 472 F.3d 662, 668 (9th Cir. 2006); *Gadda v. State Bar of Cal.*, 511 F.3d 933, 937 n.2 (9th Cir. 2007) ("It is well established that issues cannot be raised for the first time in a reply brief."). Defendant contends that its validity argument was a proper response to Plaintiff's assertion in her brief that the choice of law provision would control. Doc. 63 at 3. But raising arguments for the first time in a reply brief is acceptable only when rebutting new arguments made by the other party in response. Defendant itself raised the question of whether the choice of law provision applied in its summary judgment motion, and chose to argue waiver, rather than validity. It could have briefed both questions in asserting that Colorado law does not apply. To allow a second bite at the apple would disadvantage Plaintiff, who responded only to Defendant's waiver argument. *See* Doc. 56 at 4 n.1; *Rawls v. Maricopa Cnty.*, No. CV-10-231-PHX-GMS, 2010 WL 2927309, at *2 (D. Ariz. July 23, 2010). The Court will grant Plaintiff's motion to strike and will not consider Defendant's argument that the provision is invalid.

Defendant asserts that Plaintiff waived the choice of law provision by failing to assert Colorado law earlier in the litigation. Doc. 53 at 15-16. Defendant does not suggest when Plaintiff should have made this assertion, nor does it cite any case law regarding waiver of choice of law provisions. Instead, Defendant cites *Russo v. Barger*, 366 P.3d 577, 579-81 (Ariz. Ct. App. 2016), which held that a party waived a forum selection clause by failing to raise it until after the case had been set for trial, at which point the parties had been litigating for years. Litigating in the wrong forum for years is far different from waiting to assert the applicable law in response to a motion. The parties have not yet had reason to address which state's law applies to the Enrollment Agreement, and Plaintiff has not waived application of the choice of law provision. The Court will follow the provision agreed to by the parties and will apply Colorado law to claims based on the Enrollment Agreement.

**III.  Defendant's Motion for Summary Judgment.**

    **A.  Summary Judgment Standard.**

Summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party "bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court must view the evidence in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and draw justifiable inferences in that party's favor, *Anderson*, 477 U.S. at 255.

    **B.  Breach of Contract (Count I).**

Plaintiff asserts a breach of contract claim based on Defendant's decision to terminate her from its nursing program without allowing her to retake her failed courses.  Doc. 1 ¶¶ 40-45.  The claim is based on a provision of the Catalog addressing when a student may retake a failed course.  Defendant disputes that the Catalog is part of the contract between the parties and argues that even if it is, Defendant has not breached the plain language of the Catalog.  Doc. 53 at 6-13.  The Court finds a question of fact as to whether the Catalog is part of the parties' agreement.  But if it is part of the contract as Plaintiff claims, Defendant is entitled to summary judgment.

        **1.  Scope of the Contract.**

Under Colorado law, "[m]aterials actually provided to a student, including enrollment agreements and catalogs, may become part of the agreement."  *CenCor, Inc. v. Tolman*, 868 P.2d 396, 398 (Colo. 1994).  Such materials must manifest to a reasonable person an intent by the writer to be bound by the provisions of the manual or handbook.

*Geras v. Int'l Bus. Mach. Corp*, 726 F. Supp. 2d 1292, 1296 (D. Colo. 2010) (citing *Evenson v. Colo. Farm Bureau Mut. Ins. Co.*, 879 P.2d 402, 408-09 (Colo. App. 1993)). Whether a handbook manifests an intent to be bound by a contract is typically a question of fact. *Ferrera v. Nielsen*, 799 P.2d 458, 461 (Colo. App. 1990). Summary judgment is appropriate when the drafter has clearly and conspicuously disclaimed intent to enter a contract. *Id.*

The Enrollment Agreement cites the Catalog repeatedly. It states that Aspen's academic policies, grading standards, course requirements, refund policy, and other financial obligations are defined by the Catalog. It requires students to acknowledge – in at least three places – that they have read the Catalog. It states that students become subject to the Catalog upon signing, and commits Defendant to follow termination procedures in the Catalog. It states that the Enrollment Agreement controls when it disagrees with the Catalog, suggesting that where there is no conflict the Catalog will also govern the conduct of the parties. *See* Doc. 54 at 85-90.

Defendant argues that the Catalog cannot be part of the contract because the Enrollment Agreement allows the Catalog to be modified by Defendant unilaterally, without prior notice to Plaintiff. Docs. 53 at 8, 54 at 89 ("[T]he policies, regulations, procedures, and fees set forth in the Academic Catalog are subject to change without prior notice."). Defendant argues this language negates any promissory intent with respect to the Catalog. *Id.* at 7.

Considering the Enrollment Agreement as a whole, the Court cannot conclude that the unilateral modification clause so "clearly and conspicuously disclaim[s] intent" that Defendant is entitled to summary judgment on Count I. *Ferrera*, 799 P.2d at 461. The Catalog does not contain an express disclaimer indicating that Defendant did not intend it to be part of the parties' contract. Doc. 53 at 7. And in those cases where courts have found that unilateral modification clauses disclaim intent, the documents also included language specifying they were not intended to create a contractual relationship. *See, e.g.*, *Peru v. T-Mobile USA, Inc.*, 897 F. Supp. 2d 1078, 1086-87 (D. Colo. 2012) (handbook

6

required the party to "recognize that neither the manual or any other communication . . . is intended to in any way create a[]. . . contract of any kind, express or implied'"); *Geras*, 726 F. Supp. at 1294, 1296 ("The Plan does not constitute an express or implied contract or a promise by IBM[.]"). Whether Defendant intended to be bound by the policies outlined in the Catalog is a question of fact to be considered by a jury.

### 2. Aspen's Retake Policy.

Plaintiff's breach of contract claim asserts that the Catalog is part of the parties' contract and Defendant breached it by failing to let her retake the Adult Health I and Maternal Health courses. Doc. 1 ¶¶ 41-44. In 2021, the Catalog provided that:

- Students may retake a failed course in the next available session of Nursing Core. Students are permitted to retake a failed course once only for a total of two attempts. If the course is failed twice, students will be dismissed from the program [the "One-Failure Policy"].

- Students who fail any two attempts of nursing core courses will be dismissed from the program [the "Two-Failure Policy"].

- For Nursing Core courses with a lab/clinical component, students must pass both the theory and lab/clinical components. Failure of either the theory or lab/clinical component will result in a failing grade for both courses [The "Lab-Failure Policy"].

Doc. 43 at 110.

Plaintiff asserts that she was allowed to retake each of her failed courses under the One-Failure Policy. She argues that she would be subject to dismissal only if she failed the courses a second time. Doc. 56 at 5-7. Defendant disagrees, arguing that if Plaintiff was allowed to retake both failed courses, the Two-Failure Policy would be rendered superfluous. Defendant notes that the Two-Failure Policy says failing *any* two attempts at nursing core courses will result in dismissal – suggesting that the two failed courses need not have been the same – and that the One-Failure policy refers to *a* failed course, not multiple courses. Docs. 53 at 12-13; 60 at 3.[2]

---

[2] Defendant also suggests that Plaintiff failed four, rather than two courses. Citing the Lab-Failure Policy, Defendant contends that because Plaintiff failed two theory components she also failed their corresponding lab components and thus had four total

7

Under the plain language of the Catalog, a student may be dismissed if she fails "any" two courses. Doc. 43 at 110. Plaintiff has not shown a material dispute of fact as to whether her failures in Adult Health I and Maternal Health were appropriate.[3] To read the One-Failure Policy to allow retakes of both courses would render the Two-Failure Policy meaningless, and under Colorado law the Court must "choose a construction of the contract that harmonizes provisions instead of rendering them superfluous." *Copper Mountain, Inc. v. Indus. Sys. Inc.*, 208 P.3d 692, 700 (Colo. 2009); *see also People ex rel. Rein v. Jacobs*, 465 P.3d 1, 11 (Colo. 2020) ("In construing a contract, we interpret the contract in its entirety, seeking to harmonize and give effect to all of its provisions so that none will be rendered meaningless."). So harmonized, the One-Failure Policy applies to failure of one course, after which the course may be retaken, and the Two-Failure Policy applies to failure of two or more courses, after which re-takes are not allowed. The Court will grant summary judgment to Defendant on Plaintiff's breach of contract claim.

**C.   Breach of the Duty of Good Faith and Fair Dealing (Count II).**

Plaintiff's second count asserts that Defendant breached the duty of good faith and fair dealing implicit in the parties' contract. Doc. 1 ¶¶ 46-51. Plaintiff contends that she was wrongfully failed in her Adult Health I and Maternal Health courses and that Defendant denied her appeals for re-admission to the program for retaliatory reasons. Doc. 56 at 7-11.

Colorado law "recognizes that every contract contains an implied duty of good faith and fair dealing." *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995). "The covenant may be relied upon only when the manner of performance under a specific contract term allows for discretion on the part of either party." *Id.* Whether a party acted in good faith

---

course failures. Docs. 53 at 12; 54 at 110. Plaintiff argues persuasively that failure of a lab and theory component should be considered as one "course" because otherwise students would never be eligible to retake a course under the One-Failure Policy – they would always have two course failures when they failed the theory component. Doc. 56 at 7. The Court need not resolve this issue.

[3] Plaintiff's arguments on this issue concerning the late work policy, course grading, instructor attendance, and her appeals for re-admission are discussed below. To the extent she brings these challenges as part of her breach of contract claim, she has not identified any specific contractual provisions Defendant breached.

is a question of fact to be determined on a case-by-case basis. *University of Denver v. Doe*, 547 P.3d 1129, 1140 (Colo. 2024). The Court finds that Plaintiff has not shown a material dispute of fact as to whether Defendant breached the covenant.

### 1. Course Failures.

Plaintiff alleges she was improperly given failing grades in her Maternal Health and Adult Health I courses due to the assessment of unearned late penalty points, receipt of another student's grade, and failure of her instructor to appear by Zoom. Doc. 56 at 7-8.

The Catalog's Late Work Policy provides that if a student turns in late assignments "a 10% late penalty will be deducted for each week, or part thereof, that the assignment is late." Doc. 54 at 113. The policy gives course instructors discretion to waive the policy. *Id.* Plaintiff asserts that her late penalties were unearned, and even if warranted, her instructors should have considered Plaintiff's personal circumstances when applying the policy. Doc. 56 at 8-9. Plaintiff further asserts that her assignments were finished on time, but Defendant's submission site stopped her from uploading them within course deadlines. Doc. 57 ¶¶ 55-56, 67; 57 at 187-92. Plaintiff also cites deposition testimony of her Adult Health I instructor, Jennifer Dickinson, in which Dickinson stated that she did not typically apply late penalty points to students in her courses (Doc. 57-6 at 21-22), though email correspondence between Dickinson and Plaintiff shows she chose to do so in this instance (Docs. 57 ¶ 65, 57-8 at 104).

Even if Plaintiff has presented evidence from which a jury could conclude that the late penalty deductions were applied improperly, she has not shown that she would have passed her courses without the deductions. To the contrary, she admits that she still would have been 93 points short of a passing grade. Doc. 56 at 8 n.3.

Plaintiff argues that she received a failing grade in her Maternal Health course because she was erroneously given the grade of another student for at least one assignment. *See* Doc. 56 at 8. But when the mistake was identified, the course instructor gave her a correct score. Docs. 54 at 207, 57 ¶¶ 59, 60 at 5. Although Defendant later claimed Plaintiff deserved the original score of zero, her final grade reflects the correct score

9

(16.5/20) and the error therefore could not be the basis for Plaintiff's course failure. Doc. 54 at 175, 207. Plaintiff further contends she was given feedback for an Elizabeth Whaley, but does not provide any evidence that this caused her failing grade. Docs. 54 at 190, 57 at 176.

Finally, Plaintiff argues that Defendant breached the covenant of good faith by not requiring the Maternal Health course instructor to be present on Zoom during the course instruction. Doc. 56 at 8, 57 ¶ 33-34. But the Maternal Health course was delivered through online modules, not through virtual lectures. Doc. 61 ¶ 50. And Plaintiff presents no evidence that the failure of her instructor to appear by Zoom caused Plaintiff to fail the course.

Because Plaintiff has not presented evidence from which a reasonable jury could find that Plaintiff's course failures were due to Defendant's breach of contract, summary judgment for Defendant is appropriate. *Anderson*, 477 U.S. at 248 (the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party").

**2. Denial of Re-admission Appeals.**

Plaintiff argues that Defendant breached the covenant by denying her two appeals for re-admission. She suggests that Defendant denied the appeals for retaliatory reasons because staff knew she had hired a lawyer and suspected she had complained to ABON about Defendant's program. Doc. 56 at 9-11. Defendant argues that it exercised its discretion not to re-admit Plaintiff based on her failing grades and her abusive behavior towards Defendant's staff. Doc. 53 at 13-14.

The Catalog allows students to submit both academic appeals (challenging an earned grade) and academic standing appeals (challenging a student's dismissal due to failure to remain in good academic standing). Doc. 57 at 30. The policy does not guarantee readmission. *Id.* Count two alleges that Defendant acted in bad faith when it denied Plaintiff's academic standing appeals. Doc. 1 ¶¶ 46-51.

Plaintiff offers the following evidence to support her claim that Defendant denied her appeals for retaliatory reasons. Plaintiff submitted her first re-entry request on July 23,

2021. Doc. 57 ¶ 81. The registrar would have reviewed her application for re-admission to the program, but review was denied by Provost Joanne Weiss. Docs. 57-4 at 8, 57-2 at 8-10. Weiss was informed by Aspen staff as early as June 21, 2021 that Plaintiff had hired a lawyer to address her complaints with the school. Docs. 57-2 at 20-23, 57-9 at 1. ABON was at this time investigating Defendant after receiving a series of anonymous student complaints. Doc. 57-6 at 47-49. Weiss knew that some staff had been speculating as to who had complained to ABON (Doc. 57-2 at 26) and that ABON had been interviewing faculty members (Doc. 57-6 at 14-15).[4]

Plaintiff submitted her second re-entry request on August 13, 2021. Plaintiff stated in her appeal that she had modified her work schedule to focus more time on her classes. Doc. 54 at 199. Weiss told Plaintiff that she reviewed the appeal and Plaintiff's record (*id.* at 214), and testified that she found no new information to warrant a change in decision (Doc. 57-2 at 95). Weiss testified that she did not specifically account for the deaths of Plaintiff's close friend and family member when considering the appeal. *Id.* at 5.

Plaintiff notes that she had a higher grade-point average than nine of 30 students re-admitted to the program. Doc. 57-2 at 66. She argues that this fact, in combination with Defendant's awareness that she was considering legal action and the on-going ABON investigation, is sufficient to create a dispute of fact on whether Plaintiff was denied re-entry for improper reasons.

Defendant asserts the appeals were denied in part due to Plaintiff's grades and in part due to her abusive behavior while a student. Doc. 53 at 13-14. Defendant provides a transcript of a May 26, 2021, phone call between Plaintiff and Enrollment Director Darren Rosselli in which Plaintiff cursed and made threatening statements about two Aspen staff members. *See* Doc. 54 at 226 ("I mean I'm super fucking pissed – somebody need to talk to me like right now or there's going to be shit to pay – like I'm not fucking around[.]),

---

[4] Plaintiff asserts that Weiss knew other staff suspected Plaintiff had complained to ABON, but the evidence Plaintiff cites for this proposition does not support it. Doc. 57 ¶ 91. Weiss testified at the cited pages of her deposition that she did not recall any staff member mentioning Plaintiff as a possible complainant to ABON. Doc. 57-2 at 26-27.

227 ("I'm not fucking dealing with this stupid bitch anymore[.]").[5] Weiss testified that "conduct with faculty, with staff, with administrators" was a reason she chose not to approve Plaintiff's re-admission. *Id.* at 50-52.[6]

"[T]o 'defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise.'" *Laul v. Los Alamos Nat'l Lab'ys*, 765 F. App'x 434, 442 (10th Cir. 2019) (citing *Bones v. Honeywell Int'l, Inc.*, F.3d 869, 875 (10th Cir. 2004)). The Court concludes that Plaintiff's speculation regarding the reason for denying her re-admission application is not sufficient to create a material factual dispute. Plaintiff's primary evidence is that Defendant knew she had hired a lawyer, but she presents no evidence that this influenced the ruling on her re-admission appeals. Weiss testified to the contrary – that Plaintiff's decision to seek legal counsel "did not enter into the consideration for me at all." Doc. 57-2 at 24. Plaintiff suggests other administrators suspected Plaintiff of complaining to ABON (Doc. 57 ¶ 91), but provides no evidence Weiss knew of this speculation or that it influenced her decision. Weiss testified that she did not learn the identity of the complaining students until February 2023

---

[5] Defendant's statement of facts asserts that the recorded conversation was about grades (Doc. 54 ¶ 28); Plaintiff disputes this, saying the conversation concerned clinical rotations (Doc. 57 ¶ 28). This disagreement is immaterial and provides no basis to find the conversation inadmissible. Plaintiff does not dispute that she made the call, that it concerned her nursing program, or that she used the abusive language relied on by Defendant. Plaintiff also asserts that the conversation has not been authenticated, citing Federal Rule of Evidence 901. Doc. 57 ¶ 29. Rule 901 permits authentication of audio recordings "through 'evidence sufficient to support a finding that the item is what the proponent claims it is.'" *United States v. Alvarez-Quinonez*, No. 22-30161, 2023 WL 8368878 (9th Cir. Dec. 4, 2023) (citing Fed. R. Evid. 901(a)). Authentication can be provided by distinctive characteristics. Fed. R. Evid. 901(b)(4). The content of the transcript meets this requirement. The caller responds to the name Elizabeth and makes reference to her clinical rotations, conversations with Aspen administrators, and tuition payments to Aspen. The other speakers identify themselves as Zach and Darren, both employees of Aspen. Doc. 54 at 226-33. The Court does not find the conversation inadmissible.

[6] Defendant also provides an unfiled code of conduct report summarizing a follow-up call made by Program Director Phyllis James, which states that Plaintiff "continued yelling and speaking over [her]" as she attempted to discuss Plaintiff's issue. Doc. 54 at 235-36. Plaintiff objects to the report as hearsay and lacking authentication. Doc. 57 ¶ 30. The internal characteristics of the document appear to satisfy the authentication requirement set forth in Rule 901(b)(4), but because Defendant provides no declaration or other evidence that the form would satisfy the requirements in Rule 803(6) or another hearsay exception, the Court will not consider it.

and that she was unaware of any speculation that Plaintiff might be among them. Doc. 57-2 at 25-27. Plaintiff has shown that some students with worse grades were re-admitted, but Defendant presents uncontroverted evidence of a legitimate, non-bad-faith reason for distinguishing Plaintiff from those students – her recorded abusive conduct when dealing with Defendant's employees. The Court concludes that Plaintiff has not presented sufficient evidence for a reasonable jury to find that Defendant denied her appeals in retaliation for her hiring of a lawyer or complaining to ABON, and therefore will grant summary judgment for Aspen. *Anderson*, 477 U.S. at 248.

### D.  Unjust Enrichment (Count III).

Plaintiff asserts an alternative unjust enrichment claim. Doc. 1 ¶¶ 53-55. Because this claim is not governed by the parties' contract, the Court will apply Arizona law.

To establish unjust enrichment in Arizona, a plaintiff must show: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law. *Freeman v. Sorchych*, 245 P.3d 927, 936 (Ariz. Ct. App. 2011) (citing *Murdock-Bryan Constr., Inc. v. Pearson*, 703 P.2d 1197, 1202 (1985)). Defendant disputes that Plaintiff can establish the fourth or fifth elements.

Plaintiff paid Defendant tuition, and Defendant provided Plaintiff with instruction and other course materials. Defendant argues that Plaintiff has not established an absence of justification for the tuition she paid. It notes that it expended "materials, expertise, and resources" in preparing its courses, and that Plaintiff participated in the program. Doc. 53 at 14-15.

The Court agrees. Plaintiff obtained the benefit she paid for – she was allowed access to Defendant's nursing program and received course materials and instruction. That Plaintiff ultimately failed two courses and was dismissed from the program does not make the exchange unfair. Plaintiff cites no law suggesting that a party is unjustly enriched if the other party is not fully satisfied with what it received.

13

Plaintiff argues that Defendant was unjustly enriched because she was "wrongfully" terminated from the nursing program. Doc. 56 at 11. But as explained above, Plaintiff has failed to present sufficient evidence for a reasonable jury to conclude that her dismissal was wrongful.

Because Plaintiff has not presented evidence from which a jury could find that element four of her unjust enrichment claim is satisfied, the Court will grant summary judgment for Defendant.

**IT IS ORDERED:**

1. Defendant's motion for summary judgment (Doc. 53) is **granted**.
2. Plaintiff's motion to strike (Doc. 62) is **granted**.
3. The Clerk of Court shall enter judgment in favor of Defendant and terminate this action.

Dated this 9th day of August, 2024.

David G. Campbell
Senior United States District Judge